UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DAN GOODRICK,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>ROBIN SANDY, JAY NIELSEN, CAROLYN MELINE, BRENT REINKE, PAM SONNEN, KEVIN KEMPF, TEREMA CARLIN, GALE MUNDEN, ERIC MacEACHERN, AMY ANDERSON, WILLIAM UNGER, PAMELA SWEARIGEN, SHIRLEY ROANE, KRISTI LYNCH, DANIEL BYBEE, RANDY HARTNESS, and C/O HOUNDSHEL,<br><br>　　　　　　　Defendants. | Case No. 1:10-cv-00603-EJL<br><br><br>**MEMORANDUM DECISION AND ORDER** |

The following motions are currently pending before the Court in this prisoner civil rights matter:  (1) Defendants' Motion for Summary Judgment (Dkt. 33);  (2) Plaintiff's Motion to Strike and Disregard Portions of Defendants' Memorandum in Support of Summary Judgment and Portions of Affidavits of Carlin, Munden and Portions of Undisputed Facts (Dkt. 55); (3) Defendants' Motion for Extension of Time to File Reply Brief in Support of Summary Judgment (Dkt. 58); and (4) Defendants' Motion to Strike

**MEMORANDUM DECISION AND ORDER - 1**

the "Declaration of Dan Goodrick in Support of Plaintiff's Response Opposing

Defendants Motion for Summary Judgment" (Dkt. 60).

The Court finds that the parties have adequately stated the facts and legal

arguments in their briefs and that the decisional process would not be significantly aided

by oral argument. Therefore, the Court will decide these matters on the written motions,

briefs and record without oral argument.  D. Idaho L. Civ. R. 7.1.

For the reasons that follow, the Court will deny Plaintiff's Motion to Strike and

Disregard Portions of Defendants' Memorandum in Support of Summary Judgment and

Portions of Affidavits of Carlin, Munden and Portions of Undisputed Facts.  The Court

will also deny Defendants' Motion to Strike the "Declaration of Dan Goodrick in Support

of Plaintiff's Response Opposing Defendants Motion for Summary Judgment."

Defendants' Motion for Summary Judgment will be granted, as well as Defendants'

Motion for Extension of Time to File Reply Brief in Support of Summary Judgment.

## BACKGROUND

At all times relevant to the Complaint, Plaintiff was housed at the Idaho

Correctional Institution in Orofino (ICI-O).  On June 17, 2010, Plaintiff was accused of

engaging in prohibited sexual activity with another inmate named Gray.  (Dkt. 32-2, ¶ 3.)

During the investigation of the incident, Plaintiff was also accused of engaging in

prohibited sexual activity with an inmate named Brown.  (*Id.*, ¶¶ 27-29.)  ICI-O officials

pursued two disciplinary offense reports (DORs) against Plaintiff, (*Id.*, ¶¶ 26, 30), in

which they relied upon information provided by confidential witnesses.  (*Id.*, ¶¶ 12, 27-

**MEMORANDUM DECISION AND ORDER - 2**

29.)  Plaintiff was found guilty of sexual misconduct in both of the DORs, and he has
since been transferred to a more restrictive institution and placed in administrative
segregation. (*Id.*, ¶¶ 35-36, 39-40, 46-48.)

Plaintiff filed this lawsuit in December 2010, alleging a variety of claims.  (Dkt.
1.)  Plaintiff thereafter filed a motion to amend his complaint, along with a proposed
Amended Complaint in August 2012 (Dkt. 7).  The Court granted Plaintiff's motion and
issued a Second Initial Review Order, as required by 28 U.S.C. § 1915A.  (Dkt. 11.)  The
Court found that Plaintiff stated claims under the following causes of action: (1)
Plaintiff's rights under the First and Fourteenth Amendments were violated when certain
Defendants engaged in allegedly retaliatory conduct based on his previous litigation
activities; (2) Plaintiff was deprived of due process of law under the Fourteenth
Amendment because the two DORs for sexual misconduct were not supported by "some
evidence"; and (3) Plaintiff's Fourth and Eighth Amendment rights were violated by a
strip search that resulted in naked photographs of Plaintiff.  (*Id.*, p. 3.)

Defendants have filed a motion for summary judgment, seeking to dismiss
Plaintiff's claims with prejudice.  (Dkt. 33.)  Defendants argue the following: (1)
sovereign immunity bars Plaintiff's damages claim against the named Defendants in their
official capacities; (2) Plaintiff fails to state a valid retaliation claim; (3) Plaintiff fails to
state a claim against Defendants Unger, Hartnett and Houndshel; (4) the "some evidence"
standard no longer applies to disciplinary offenses in light of the U.S. Supreme Court's
decision in *Swarthout*; (5) even if the "some evidence" standard applies, there was some

**MEMORANDUM DECISION AND ORDER - 3**

evidence to support the discipline imposed against Plaintiff; (6) the photographing did not violate Plaintiff's Fourth Amendment rights; (7) the photographing of Plaintiff did not constitute cruel and unusual punishment; and (8) neither the DORs, nor the placement of the PRP alert and subsequent transfer of Plaintiff to administrative segregation were the result of unlawful retaliation.

Plaintiff has filed a Plaintiff's Motion to Strike and Disregard Portions of Defendants' Memorandum In Support of Summary Judgment and Portions of Affidavits of Carlin, Munden and Portions of Undisputed Facts.  (Dkt. 55.)  Plaintiff contends that Defendants' references to Plaintiff's prior convictions should be stricken, pursuant to Federal Rules of Evidence 404(b) and 609(b).  Defendants have also filed a Motion to Strike the "Declaration of Dan Goodrick in Support of Plaintiff's Response Opposing Defendants' Motion for Summary Judgment."  (Dkt. 60.)

## PLAINTIFF'S MOTION TO STRIKE

Plaintiff seeks to strike portions of Defendants' Memorandum in Support of Summary Judgment, Defendants' Disputed Facts, Defendant Carlin's Affidavit and Defendant Munden's Affidavit, where such documents reference Plaintiff's prior convictions.  (Dkt. 55.)  Plaintiff argues such references are character evidence offered by Defendants to prove Plaintiff acted in conformity therewith.  (Dkt. 55, pp. 1-2.)  He further argues that the convictions are inadmissible under Rule 609, because the probative value of the convictions is substantially outweighed by its prejudicial effect.  (*Id.*)  The Court disagrees.

**MEMORANDUM DECISION AND ORDER - 4**

A trial court can only consider admissible evidence in ruling on a motion for summary judgment.  *See* Fed.R.Civ.P. 56(e); *Orr. v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002).  The Federal Rules of Evidence govern the admissibility of evidence.  All relevant evidence is admissible unless otherwise stated by the Constitution, statute or other Federal Rules.  Fed.R.Evid. 402.  Under Rule 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed.R.Evid. 401.  Evidence that is not relevant is not admissible.  Fed.R.Evid. 402.

Pursuant to Rule 403 of the Federal Rules of Evidence, the court may exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Fed.R.Evid. 403.  Rule 403 has been characterized, however, "as an extraordinary remedy to be used sparingly because it permits the trial court to exclude otherwise relevant evidence."  *U.S. v. Patterson*, 819 F.2d 1495, 1505 (9th Cir. 1987).

Pursuant to Rule 404 of the Federal Rules of Evidence, character evidence is generally not admissible to prove conduct.  In particular, "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."  Fed.R.Evid. 404(b).  Other crimes, wrongs or acts are admissible, however, to prove motive, opportunity, intent, preparation and plan.  *Id.*

**MEMORANDUM DECISION AND ORDER - 5**

In a closely related vein, but contrary to the general rule on character evidence, evidence of habit or routine practice is admissible to prove that the conduct of a person on a particular occasion is in conformity with the habit or routine practice. Fed.R.Evid. 406; *see also* Fed.R.Evid. 406 advisory committee notes (1972) ("character and habit are close akin"). Habit is a person's regular practice of meeting a particular kind of situation with a specific type of conduct. (*Id*.)

Finally, Rule 609 of the Federal Rules of Evidence governs the admissibility of a witness's prior convictions for impeachment purposes. Pursuant to Rule 609(a), for purposes of attacking the character for truthfulness of a witness, evidence that the witness has been convicted of a felony "shall be admitted, subject to Rule 403 . . . if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused." Fed.R.Evid. 609(a)(1). In analyzing conviction evidence, the court must engage in a "genuine balancing" of probative value and prejudicial effect. *U.S. v. Bagley*, 772 F.2d 482, 487 (9th Cir. 1985). However, a conviction more than ten years old (measured from the date of conviction or release from confinement for the conviction, whichever is later), is generally not admissible "unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." Fed.R.Evid. 609(b).

The Court finds that Plaintiff's convictions and the length of his sentence are relevant to Plaintiff's claims and whether Defendants had a culpable state of mind for

**MEMORANDUM DECISION AND ORDER - 6**

purposes of retaliation and the claims under the Fourth and Eighth Amendments.

Defendants' knowledge of an inmate's criminal convictions and the length of an inmate's

sentence informs their management decisions and is an important consideration in

assessing whether Defendants' actions reasonably advanced a legitimate correctional

goal.  Defendants did not offer the conviction evidence in question to show that Plaintiff

acted in conformity with such actions, but to show Defendants' knowledge when they

investigated and transferred him.  The probative value of this evidence is not substantially

outweighed by the danger of unfair prejudice to Plaintiff.  Accordingly, Plaintiff's Motion

to Strike and Disregard Portions of Defendants' Memorandum in Support of Summary

Judgment and Portions of Affidavits of Carlin, Munden and Portions of Undisputed Facts

will be denied.

## MOTION FOR SUMMARY JUDGMENT

### 1.      Standard

Summary judgment is appropriate where a party can show that, as to any claim or

defense, "there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(a).  One of the principal purposes of the

summary judgment rule "is to isolate and dispose of factually unsupported claims . . . ."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  It is "not a disfavored procedural

shortcut," but is instead the "principal tool[] by which factually insufficient claims or

defenses [can] be isolated and prevented from going to trial with the attendant

unwarranted consumption of public and private resources."  *Id.*, at 327.

**MEMORANDUM DECISION AND ORDER - 7**

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).  The requirement is that there be no *genuine* dispute as to any *material* fact.  Material facts are those "that might affect the outcome of the suit." *Id.,* at 248.  "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  The moving party is entitled to summary judgment if that party shows that each material fact cannot be disputed.  To show that the material facts are not in dispute, a party may cite to particular parts of materials in the record, or show that the adverse party is unable to produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1)(A) & (B).  The Court must consider "the cited materials," but it may also consider "other materials in the record."  Fed. R. Civ. P. 56(c)(3).

If the moving party meets its initial responsibility, then the burden shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The existence of a scintilla of evidence in support of the non-moving party's position is insufficient.  Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Liberty Lobby*, 477 U.S. at 252.

Material used to support or dispute a fact must be "presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  Affidavits or declarations

**MEMORANDUM DECISION AND ORDER - 8**

submitted in support of or in opposition to a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may consider that fact to be undisputed.  Fed. R. Civ. P. 56(e)(2).  The Court may grant summary judgment for the moving party "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party.  Although all reasonable inferences which can be drawn from the evidence must be drawn in a light most favorable to the non-moving party, *T.W. Elec. Serv., Inc.*, 809 F.2d at 630-31, the Court is not required to adopt unreasonable inferences from circumstantial evidence, *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

To state a claim under § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law.  *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

**MEMORANDUM DECISION AND ORDER - 9**

2.    **Discussion**

   **A.    *Sovereign Immunity***

   Defendants argue that the doctrine of sovereign immunity bars Plaintiff's damages claims against the named Defendants in their official capacities.  Plaintiff contends Defendants were sued in their official capacities only for declaratory and injunctive relief.

   A state's sovereign immunity from suit in federal court normally extends to suits against its officers in their official capacities.  *Cardenas v. Anzai*, 311 F.3d 929, 934 (9th Cir. 2002).  However, the Supreme Court has set forth an exception where a plaintiff maintains a suit for prospective relief against a state official in his official capacity.  *Id*., (citing *Ex Parte Young*, 209 U.S. 123 (1908)).  Accordingly, any damage claims against Defendants in their official capacities are barred by the Eleventh Amendment and will be dismissed with prejudice.  As to Plaintiff's claims for declaratory and injunctive relief, those claims will be dismissed with prejudice for the reasons discussed below.

   **B.    *Retaliation Claim***

   Defendants seek summary judgment on the claim that Plaintiff's rights under the First and Fourteenth Amendments were violated when certain Defendants engaged in allegedly retaliatory conduct based on his previous litigation activities.  Defendants argue that Plaintiff failed to allege sufficient facts in the Amended Complaint to support his claim and that his briefing only argues generalities.

**MEMORANDUM DECISION AND ORDER - 10**

A retaliation claim must allege the following: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, . . . that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). Although a "chilling effect on First Amendment rights" is enough to state an injury, *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001), "bare allegations of arbitrary retaliation" are insufficient to state a retaliation claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 n. 4 (9th Cir. 1985). "A prisoner suing prison officials under section 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline." *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam); *see also Turner v. Safley*, 482 U.S. at 89 ("[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."). While "timing can be properly considered as circumstantial evidence of retaliatory intent," there must generally be something more than simply timing to support an inference of retaliatory intent. *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995).

Plaintiff disputes many "facts" underlying Defendants' contention that he has not come forward with sufficient evidence upon which a jury could find that the elements of a retaliation claim can be met. (Dkt. 56-1.)  He relies on two past incidents to show that

**MEMORANDUM DECISION AND ORDER - 11**

Defendants had reason to retaliate against him.

First, he alleges that he sued Defendant Terema Carlin and Amy Anderson in a prior lawsuit, 1:09-cv-00017-BLW, and this provided them with a reason to retaliate against him. The prior lawsuit terminated with an order concluding that Plaintiff had filed his lawsuit beyond the statute of limitations. (Dkts. 45, 60 in Case No. 1:09-cv-00017-BLW.) The basis of that lawsuit was that, in 2005, an inmate had accused Plaintiff of having sexual relations with him, and that the disciplinary offense report (DOR) that Plaintiff was issued was eventually dismissed, but Plaintiff was never told nor restored to the privileges taken from him as a result of the DOR.  (Dkt. 56-2, ¶ 7.)

Second, he alleges that an incident in December 2009 provided reason to retaliate against him.  In that particular incident, another inmate, Mr. Cruz, accused Plaintiff of inappropriate sexual behavior and Defendant Carlin reported that the results of that investigation were "inconclusive."  (Dkts. 12-3, 56-2, ¶¶ 8-16.) Plaintiff was suspicious that this inmate falsely accused him of sexual improprieties as a means of revenge after Plaintiff had him removed as his cellmate.  (*Id*.)  Plaintiff became more suspicious when prison officials refused to produce the lie detector test results and other investigatory findings to a third party for review, pursuant to an informal (non-litigation) request by the American Civil Liberties Union, on behalf of Plaintiff.  (Dkt. 56-2, ¶ 13.)  Plaintiff claims that due to the pressure he was putting on Defendants, he began to be harassed and rumors started to circulate about sexual misconduct.  (*Id.*, ¶ 14.)

**MEMORANDUM DECISION AND ORDER - 12**

The incidents at issue center on whether Plaintiff had sexual relations with William "Katlynn" Gray in June 2010 and Jason Brown.  In the incidents at issue, Plaintiff alleges that Carlin and Anderson coerced the inmate witnesses into giving false statements against him by suggesting to them what their answers in the interview should be.  Some of the witnesses have given conflicting statements, depending upon whether their opinion was solicited by Plaintiff or prison officials.

While Plaintiff's disputed facts may be sufficient to show that Carlin and Anderson may have had a motive to retaliate, Plaintiff has produced insufficient evidence to show that the transfer was not for a legitimate penological purpose. The larger record of the investigation of the Brown and Gray incidents reveals that the inmates provided corroborating information upon which Defendants could reasonably conclude that Plaintiff posed a safety risk to the inmates on his tier and that a transfer was appropriate to address the safety needs of the other inmates.  (Dkt. 34, 35.)

Of the ten inmates interviewed in the investigation (conducted by Sergeant Roane), ten said that Plaintiff engaged in intimidation. (Dkt. 34, p. 3.)  Ten out of ten inmates said that Plaintiff was engaged in running a "store" at rates of two for one, three for two, or three for one.  (*Id*.)  Some said that he used this tactic to get younger inmates into debt, and then asked them for sexual favors to settle their debt with him.  (*Id*.) Plaintiff was referred to as a "Chicken Hawk" and a "will pay [for sex]" in the housing unit.  (*Id*.)  Some of the inmates knew that Plaintiff and Gray were having sexual relations, and they believed it was consensual.  (*Id*.)  One inmate said Plaintiff had

**MEMORANDUM DECISION AND ORDER - 13**

propositioned him, and another admitted to having engaged in oral sex with Plaintiff.

Another inmate stated that Plaintiff said to him, "let me give you a — or why don't you

come into the cell and we can wrestle naked." (Dkt. 34, p. 31.). Other evidence included

the fact that Plaintiff had given Brown gifts; that Plaintiff kept a journal that corroborated

a pattern of behavior and obsession with Brown, then Gray, then a third inmate; and that

Plaintiff had a history of sexual crimes, including predatory crimes. (*Id.*, p. 5; Dkt. 33-9,

Affidavit of Terema Carlin in Support of Defendants' Motion for Summary Judgment, ¶

5.) Importantly, the record reflects that the two inmates Plaintiff was accused of having

sexual relationships with were both vulnerable individuals in need of special protection

–Jason Brown, a developmentally-challenged inmate, and William "Katlynn" Gray, a

transgender inmate. (Dkt. 34, 35.)

Thus, while Plaintiff's disputed facts suggest that motives for retaliation may have

existed, he has provided insufficient evidence to show that Plaintiff's DORs regarding

Brown and Gray, the sexual predator alert, and his transfer to administrative segregation

did not reasonably advance legitimate correctional goals – including eliminating prison

rape, discouraging sexual activity in the prisons, and protecting vulnerable inmates.

Accordingly, Plaintiff's claim of retaliation is subject to summary judgment.

### C.    *Due Process Claim*

Defendants seek summary judgment on the claim that Plaintiff was deprived of

due process of law under the Fourteenth Amendment because the two DORs for sexual

misconduct were not supported by "some evidence." Defendants argue that the "some

**MEMORANDUM DECISION AND ORDER - 14**

evidence" standard no longer applies to disciplinary offenses in light of the U.S. Supreme

Court's decision in *Swarthout v. Cooke*, 131 S.Ct. 859 (2011).

The right to due process of law under the Fourteenth Amendment prohibits the

government from depriving an individual of a liberty or property interest without

following the proper procedures for doing so. *Wolff v. McDonnell*, 418 U.S. 539, 558-66

(1974). Because liberty interests protected by the Due Process Clause are "generally . . .

limited to freedom from restraint," a prisoner asserting a due process claim based on

defects in the prison's disciplinary process must show that he has been subjected to an

"atypical and significant hardship . . . in relation to ordinary incidents of prison life."

*Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Plaintiff was sentenced to thirteen days in disciplinary segregation, with an

accompanying loss in certain privileges, for each sexual misconduct offense. (Dkt. 1-5,

pp. 28-29; 1-6, p. 11-12; Exhibits 22 and 25 to Plaintiff's Complaint.) This Court set

forth in its Initial Review Order (Dkt. 6, p. 6), that this punishment was not an atypical

and significant hardship in relation to the ordinary incidents of prison life, *see Sandin*,

515 at 475-76 (allowing thirty days of administrative segregation), and therefore Plaintiff

was not deprived of a liberty interest that would concern the Due Process Clause. This

Court also concluded that Plaintiff did not allege sufficient facts to show that he had a

liberty interest at stake when he was transferred to a different institution and apparently

placed in administrative segregation there. *See Meachum v. Fano,* 427 U.S. 215, 225-27

(1976) (holding that prisoners have no due process interest protecting against a transfer

**MEMORANDUM DECISION AND ORDER - 15**

from one institution to another); *cf. Wilkinson v. Austin*, 545 U.S. 209, 224 (2005) (holding that indefinite confinement in a supermax prison with exceptionally limited human contact is atypical and significant).  Without a constitutional liberty interest at stake, Plaintiff cannot demonstrate that he was deprived of various procedural rights during the DOR and restrictive housing hearings.

Nevertheless, the Court allowed Plaintiff to continue with his claim, because the Ninth Circuit has held that a prisoner can still state a due process claim if a disciplinary punishment is not supported by at least "some evidence," regardless whether the prisoner can satisfy the *Sandin* test.  *Burnsworth v. Gunderson*, 179 F.3d 771, 774 (9th Cir. 1999) (citing *Superintendent v. Hill*, 472 U.S. 445 (1985)).  Defendants argue that the "some evidence" standard is no longer applicable given the U.S. Supreme Court's decision in *Swarthout v. Cooke*, 131 S.Ct. 859 (2011).

In *Swarthout*, *supra*, the U.S. Supreme Court reviewed the granting of habeas relief in a parole matter based on California's "some evidence" rule under the Due Process Clause.  The Supreme Court stated that as with any due process claim, it first must determine whether there exists a liberty or property interest of which a person has been deprived, and if so whether the procedures followed by the State were constitutionally sufficient.  *Id.*, at 862-63.  The Supreme Court then held that a due process interest in parole-related issues can be found only where a state-created liberty interest exists.  (*Id.*)  Therefore, Ninth Circuit case law permitting due process claims in inmate settings where no liberty interest is found, e.g. *Burnsworth v. Gunderson*, 179

**MEMORANDUM DECISION AND ORDER - 16**

F.3d 771, 775 (9th Cir. 1999), no longer provide viable legal grounds for relief.

Accordingly, since this Court has already determined that Plaintiff's due process claims do not pertain to a protected liberty interest under the Fourteenth Amendment, these claims are subject to summary judgment.

### D.     Fourth Amendment Claim

Defendants seek summary judgment on the claim that Plaintiff's rights under the Fourth Amendment were violated by a strip search that resulted in naked photographs of Plaintiff.  Defendants argue Plaintiff has not come forth with any evidence to raise a genuine issue of material fact under the Fourth Amendment.

Whether a search is reasonable under the Fourth Amendment requires a case-by-case "balancing of the need for the particular search against the invasion of personal rights that the search entails . . . ."  *Bell v. Wolfish*, 441 U.S. 520, 559 (1979).  The required factors for courts to consider include: (1) "the scope of the particular intrusion," (2) "the manner in which it is conducted," (3) "the justification for initiating it," and (4) "the place in which it is conducted.*"  Byrd v. Maricopa County Sheriff's Dept.*, 629 F.3d 1135, 1141 (9th Cir. 2011), quoting *Bell v. Wolfish*, 441 U.S. at 559.  However, the constitutional rights of convicted prisoners are subject to limitations arising "both from the fact of incarceration and from valid penological objectives -- including deterrence of crime, rehabilitation of prisoners, and institutional security."  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).

**MEMORANDUM DECISION AND ORDER - 17**

The Court agrees with Defendants that all four factors weigh in favor of reasonableness.  As to the first factor, the intrusion subjected Plaintiff to a visual body cavity search and to the photographing of his nude body for potential evidence of sexual assault, rape or sexual activity.  (Dkt. 33-3, Affidavit of Shirley Roane in Support of Defendants' Motion for Summary Judgment ("Roane Aff."), ¶¶ 19-22; Dkt. 33-11, Affidavit of Daniel Bybee in Support of Defendants' Motion for Summary Judgment ("Bybee Aff."), ¶¶ 9-10.)  With regard to the second factor, the search was conducted privately and by a member of the same sex.  (Dkt. 33-3, Roane Aff., ¶¶ 23-24; Dkt. 33-11, Bybee Aff., ¶¶ 11-13.)  As to the third factor, the search was initiated to preserve any potential evidence of a crime and/or disciplinary offense.  (Dkt. 33-3, Roane Aff., ¶¶ 20-22.)  And with regard to the fourth factor, the search was conducted in a private administrative segregation cell, with only Plaintiff and the male correctional officer conducting the search present.  (Dkt. 33-3, Roane Aff. ¶¶ 23-24; Dkt. 33-11, Bybee Aff., ¶¶ 8,11.)

While Plaintiff claims that the taking of the nude photographs were not necessary and did not produce any evidence of sexual activity, the Court finds that the taking of such pictures supports the legitimate penological purpose of identifying and preventing prison rape.  And as to Plaintiff's argument that the search was not private and conducted by a male officer, (because the photographs were turned over to Sergeant Roane – a female), the Court finds that Roane's brief viewing of the photographs for purposes of her investigation is justified under the Fourth Amendment.  *See Grummett v. Rushen*, 779

**MEMORANDUM DECISION AND ORDER - 18**

F.2d 491, 495-96 (9th Cir. 1985).  Accordingly, Defendants are entitled to summary

judgment on Plaintiff's Fourth Amendment claims.

### E.      Eighth Amendment Claim

Defendants also seek summary judgment on Plaintiff's claim that the

photographing of his naked body violated his Eighth Amendment right against cruel and

unusual punishment.

The Supreme Court has stated that only the "unnecessary and wanton infliction of

pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment."

*Somers v. Thurman*, 109 F.3d 614, 622, (quoting *Whitley v. Alvers*, 475 U.S. 312, 319

(1986)).  Thus, courts considering a prisoner's claim must ask: 1) if the officials acted

with a sufficiently culpable state of mind; and 2) if the alleged wrongdoing was

objectively harmful enough to establish a constitutional violation.  *Id*., (*citing Hudson v.*

*McMillian*, 503 U.S. 1, 8 (1992).

The Court finds that Plaintiff's claim fails under the "subjective" component of the

analysis, because as set forth above, the Court has determined that the search occurred

with penological justification.  The evidence in the record indicates that the search and

photographs were conducted to investigate and prevent prison rape.  While Plaintiff

contends the Defendants' actions were retaliatory and intended to humiliate him, he

offers no evidence to substantiate his claims.

Nor do his contentions establish conduct objectively harmful enough to establish a

constitutional violation.  An inmate must objectively show that he has been deprived of

**MEMORANDUM DECISION AND ORDER - 19**

something "sufficiently serious." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 1997).

Claims of humiliation from unclothed body searches, without more, do not establish

sufficiently serious deprivations to invoke Eighth Amendment protection. *Id.*, (citing

*Somers v. Thurman*, 109 F.3d at 616 (Eighth Amendment did not prohibit female guards

from performing visual body cavity searches on male inmates or watching male inmates

shower, despite one inmate's allegation that the guards pointed, joked and "gawked" at

him)); *see also Grummett v. Rushen*, 779 F.2d at 494 n.1 (holding prison's policy

allowing female guards to observe male inmates disrobing, showering, using the toilet

and being strip-searched, and allowing them to conduct pat-down searches in the groin

area, did not amount to "the type of shocking and barbarous treatment protected against

by the [E]ighth [A]mendment"). Thus, because Plaintiff has not alleged that he suffered

any physical or psychological harm from the photographs, Defendants are entitled to

summary judgment on this claim as well.

## ORDER

**IT IS ORDERED:**

1.     Plaintiff's Motion to Strike and Disregard Portions of Defendants'
       Memorandum in Support of Summary Judgment and Portions of Affidavits
       of Carlin, Munden and Portions of Undisputed Facts (Dkt. 55) is DENIED.

2.     Defendants' Motion for Summary Judgment (Dkt. 33) is GRANTED, and
       this entire case is dismissed with prejudice.

**MEMORANDUM DECISION AND ORDER - 20**

3.      Defendants' Motion for Extension of Time to File Reply Brief in Support of

Summary Judgment (Dkt. 58) is GRANTED.

4.      Defendants' Motion to Strike the "Declaration of Dan Goodrick in Support

of Plaintiff's Response Opposing Defendants Motion for Summary

Judgment" (Dkt. 60) is DENIED.

SO ORDERED.

DATED:  **September 25, 2013**

~~Honora~~ble Edward J. Lodge
U. S. District Judge